Eleanor POWELL, Appellant,

v.

CHESAPEAKE AND POTOMAC TELE-
PHONE COMPANY OF VIRGINIA;
Connecticut General Life Insurance
Company, a Cigna Company, and
American Telephone and Telegraph,
Inc., a New York Corporation, Appel-
lees.

and

AT & T Communications of Virginia,
Inc., Defendant.

No. 85–1072.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 8, 1985.
Decided Dec. 18, 1985.

Diane H. Mahshie (James R. Tate, Tate & Bywater, Ltd., Vienna, Va., on brief), for appellant.

Jeffrey Anne Tatum (Adams, Duque & Hazeltine, Los Angeles, Cal., on brief), Stephen M. Colangelo (Boothe, Prichard & Dudley, Rodney H. Glover, Thomas & Fiske, Alexandria, Va., on brief), for appellees.

Before WIDENER and PHILLIPS, Circuit Judges, and HILTON, United States District Judge for the Eastern District of Virginia, sitting by designation.

JAMES DICKSON PHILLIPS, Circuit Judge:

Eleanor Powell, a former employee of C & P Telephone Company of Virginia (C & P) and a beneficiary under its self-funded employee benefit plan (the Plan), sued that company, its former parent, AT & T, and Connecticut General Life Insurance Company (Connecticut General), the Plan's administrator, for the breach of various fiduciary duties under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*, in the handling of her claim for disability benefits.[1] Although she had received all of the benefits to which she was entitled, Powell sought $5 million in extracontractual and punitive damages under ERISA, and also sought to invoke the court's pendent jurisdiction over Virginia state law claims for intentional infliction of emotional distress, breach of an implied covenant of good faith and fair dealing, breach of contract, and violation of Virginia's Unfair Trade Practices Act, Va. Code § 38.1–49, *et seq.* (1950), based on the same alleged misconduct as gave rise to her federal cause of action under ERISA. The district court granted the defendants' motions for summary judgment and dismissed all of Powell's claims. We agree with the district court that Powell's state law claims are preempted by ERISA, and that extracontractual and punitive damages are not, in these circumstances, available under ERISA, and we therefore affirm.

I

Powell received disability benefits under the Plan from February 1978 through May 1983. She complains of constant harassment by C & P and Connecticut General throughout this period, causing her and her son emotional distress and precipitating her divorce. According to Powell, the appellees repeatedly demanded unnecessary

---

1. Specifically, the complaint alleges that C & P and Connecticut General failed to discharge their fiduciary duties solely in the interest of Plan beneficiaries pursuant to 29 U.S.C. § 1104(a)(1); breached their duties of disclosure under 29 U.S.C. § 1021; and failed to provide Powell with adequate written notice of termination, as required by 29 U.S.C. § 1133(1).

medical reports, refused to provide her attorney with copies of her claim file, and unjustifiably withheld benefit payments on two occasions.

Powell's benefits were terminated in June 1983, after she received a substantial Social Security award, which represented monthly benefits retroactive to July 1977. When combined with the Social Security award, Powell's Plan benefits exceeded 50% of her base pay prior to disability, the benefits ceiling under the Plan. Powell refused C & P's request to refund the overpayment.

Thereafter, Powell filed this action and the defendants counterclaimed for a refund of benefits. The counterclaim was nonsuited after Powell's complaint was dismissed, and this appeal followed.

## II

### A. *Preemption of State Law Claims.*

With certain stated exceptions,[2] ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" governed by ERISA. 29 U.S.C. § 1144(a). "State law" is defined to include "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C. § 1144(c)(1).

In *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2899–1900, 77 L.Ed.2d 490 (1983), the Supreme Court, citing legislative history and referring to the language and structure of the statute, construed the preemption clause in its broadest sense, and held that "[a] law 'relates to' an employee benefit plan ... if it has a connection with or reference to such a plan." Thus, the scope of § 1144(a) is not limited to state laws "specifically designed to affect employee benefit plans." *Id.* at 98, 103 S.Ct. at 2900.

The state laws at issue in *Shaw*, the New York Human Rights Law (prohibiting discrimination in employment, including discrimination in employee benefit plans on the basis of pregnancy), and New York's Disability Benefits Law (requiring employers to pay sick-leave benefits to employees unable to work due to pregnancy), "clearly 'relate to'" employee benefit plans. *Id.* at 97, 103 S.Ct. at 2900. The Court observed, however, that some state actions may affect employee benefits plans in "too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Id.* at 100, n. 21, 103 S.Ct. at 2901, n. 21. This category includes, for example, state garnishment of a spouse's pension income to enforce alimony and support orders. *Id., citing American Telephone and Telegraph Co. v. Merry*, 592 F.2d 118 (2d Cir.1979).

█ In this case, none of the state laws under which Powell claims relief have any intrinsic connection with employee benefit plans. The question is therefore whether state law *claims* which relate to the administration of an ERISA-governed plan, but which arise under general state *laws* which themselves have no impact on employee benefit plans, are within the scope of ERISA preemption. Given the "unparalleled breadth" of the preemption clause, *Holland v. Burlington Industries, Inc.*, 772 F.2d 1140, 1147 (4th Cir.1985), and the broad remedial policy of ERISA, we hold that state laws, insofar as they are invoked by beneficiaries claiming relief for injuries arising out of the administration of employee benefit plans, "relate to" such plans and, absent an applicable exemption, are preempted by ERISA.

█ The preemption clause effectuates a broad remedial policy to protect the interests of participants in ERISA-governed plans and their beneficiaries "by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C.

---

2. The most important of these exceptions allow continued operation of state insurance, banking, and securities laws, 29 U.S.C. § 1144(b)(2)(A), and generally applicable criminal laws, 29 U.S.C. § 1144(b)(4).

§ 1001(b). Thus, ERISA imposes extensive duties on plan administrators, 29 U.S.C. §§ 1101–1114, and provides a comprehensive scheme for the criminal and civil enforcement of fiduciary obligations, 29 U.S.C. §§ 1131–1132.[3] To the extent that ERISA redresses the mishandling of benefits claims or other maladministration of employee benefit plans, it preempts analogous causes of action, whatever their form or label under state law. *See Dependahl v. Falstaff Brewing Corp.*, 653 F.2d 1208, 1215–16 (8th Cir.1981) ("If Congress has already provided a remedy [under ERISA], ... the state law is preempted, regardless of whether or not a conflict exists which involves a direct interference by the state law with [ERISA]."). A contrary rule would undermine ERISA's important policy of promoting uniformity in employee benefit laws, reflected in the legislative history, in the Act's declaration of policy, and in the preemption clause itself, by creating the "potential ... for conflicting employer obligations and variable standards of recovery." *Holland*, at 1147. Accordingly, the state law claims in this case, all of which relate exclusively to alleged breaches of fiduciary responsibility in the administration of C & P's employee benefit plan, "relate to" the plan and, unless an exception applies, are preempted, leaving Powell to such remedies as are available under ERISA.

This analysis comports with several recent Ninth Circuit decisions in which that court concluded that state claims based on the maladministration of employee benefit plans are preempted by ERISA, even where the state statutory and common law under which the claims arise bears no inherent connection with ERISA-governed plans. *See Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1095 (9th Cir.1985); *Scott v. Gulf Oil Corp.*, 754 F.2d 1499, 1504–05 (9th Cir.1985); *Blau v. Del Monte Corp.*, 748 F.2d 1348, 1356 (9th Cir.1984); *Russell v. Massachusetts Mutual Life Insurance Co.*, 722 F.2d 482, 487–88 (9th Cir.1983), *rev'd on other grounds*, —— U.S. ——, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). *See also Gilbert v. Burlington Industries, Inc.*, 765 F.2d 320, 327 (2d Cir.1985).

◾ Powell contends that even if her state law claims are within the scope of ERISA's preemption provision, her claims for breach of an implied covenant of good faith and fair dealing and for violations of the Virginia Unfair Trade Practices Act, both of which purport to impose duties on insurers,[4] are nevertheless rescued from

---

3. Under 29 U.S.C. § 1132, entitled "Civil enforcement," a plan participant or beneficiary may sue to recover benefits due under the plan, to enforce his rights under the plan, or to clarify his rights to future benefits under the plan, § 1132(a)(1)(B); or, if the plan administrator fails or refuses to comply with a request for certain information, a beneficiary may recover, subject to the court's discretion, up to $100 a day from such failure or refusal, § 1132(a)(1)(A); or, a participant, beneficiary, or fiduciary may bring an action to enjoin administrative acts which violate ERISA or the terms of the plan or to obtain "other appropriate relief" to redress such violations or to enforce provisions of ERISA or the terms of the plan. § 1132(a)(3). A plan may recover from its administrator any losses resulting from the breach of fiduciary duties and may seek "such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary," § 1109(a). Any person who willfully violates the provisions of ERISA may be fined, upon conviction, up to $5,000, or imprisoned up to one year, or both, and in the case of violations by other than an individual, a fine

of up to $100,000 may be imposed, § 1131. For other remedies, including those available to the Secretary, see § 1132(a)(4), (a)(5), (a)(6), (b); for availability of attorney's fees and costs, see § 1132(g).

4. The Virginia Unfair Trade Practices Act constitutes Article 6 of Virginia's Insurance Code and declares as its purpose the regulation of trade practices in the business of insurance. Specifically, Powell alleges in her complaint that the defendants violated § 38.1–52.1 which provides that "[n]o person shall make, issue, [or] circulate ... any estimate, illustration, circular, statement, sales presentation, omission, or comparison which (1) Misrepresents the benefits, advantages, conditions or terms of any insurance policy."

The implied covenant of good faith arises, in certain circumstances, from the "relationship of confidence and trust ... between the insurer and the insured which imposes upon the insurer the duty to deal fairly with the insured in the handling and disposition of any claim covered by the policy." *Aetna Casualty & Surety Co. v.*

preemption by an "insurance saving clause," which provides that ERISA does not "exempt or relieve any person from any law of any State which regulates insurance...." 29 U.S.C. § 1144(b)(2)(A). We disagree. The insurance saving clause is limited by the so-called "deemer clause," which provides that no employee benefit plan "shall be deemed to be an insurance company or other insurer ... or to be engaged in the business of insurance ... for purposes of any law of any State purporting to regulate insurance companies [or] insurance contracts...." 29 U.S.C. § 1144(b)(2)(B). Thus, C & P cannot be deemed to be an insurer or otherwise engaged in the business of insurance by virtue of its sponsorship of the Plan and Powell's claims against C & P under state laws regulating insurance are not exempted from preemption by the insurance saving clause.

Since Connecticut General is not an "employee benefit plan," the deemer clause is inapplicable to it. *See* 29 U.S.C. § 1144(b)(2)(B). Powell contends that as an insurance company, Connecticut General is subject to state laws regulating insurance, including the implied covenant of good faith and fair dealing and the Virginia Unfair Trade Practices Act, and that these claims are therefore saved from preemption by the insurance saving clause, § 1144(b)(2)(A).

■ We read the insurance saving clause, however, to exempt from ERISA's preemptive effect only those state insurance laws that regulate the "business of insurance." Regulation of the "business of insurance" is expressly reserved to the states by the McCarran-Ferguson Act, 15 U.S.C. §§ 1011–1015,[5] and ERISA's insurance saving clause, which is similarly worded and which reflects the concerns of McCarran-Ferguson, is most reasonably construed to cover the same category of state insurance regulation. *See Metropolitan Life Insurance Co. v. Massachusetts,* — U.S. —, — n. 21, 105 S.Ct. 2380, 2392 n. 21, 85 L.Ed.2d 728 (1985) ("The ERISA saving clause ... appears to have been designed to preserve the McCarran-Ferguson Act's reservation of the business of insurance to the States.").

The primary features of an insurance contract are the spreading and underwriting of a policyholder's risk. *Group Life & Health Insurance Co. v. Royal Drug Co.,* 440 U.S. 205, 211, 99 S.Ct. 1067, 1073, 59 L.Ed.2d 261 (1979). In enacting the McCarran-Ferguson Act, "Congress was concerned with the type of state regulation that centers around the contract of insurance...." *SEC v. National Securities, Inc.,* 393 U.S. 453, 460, 89 S.Ct. 564, 568, 21 L.Ed.2d 668 (1969). The Act did not, however, "purport to make the States supreme in regulating all the activities of insurance *companies;* ... only when they are engaged in the 'business of insurance' does the statute apply." *Id.* at 459–60, 89 S.Ct. at 568.

■ In its role as Plan administrator, Connecticut General neither spreads nor underwrites insurance risks; there is no insurance policy or contract. Rather, Connecticut General provides certain purely administrative claims processing functions pursuant to an administrative services agreement with the Plan's sponsor, C & P.[6] Thus, notwithstanding that Virginia's implied covenant of fair dealing and Unfair Trade Practices Act may in some circum-

*Price,* 206 Va. 749, 761, 146 S.E.2d 220, 227–28 (1966).

**5.** The McCarran-Ferguson Act provides, in pertinent part, that "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance ...." 15 U.S.C. § 1012(b).

**6.** Under the administrative services agreement, Connecticut General agreed, among other things, to provide standard claim forms for the administration of the plan; to determine the propriety of claims in accordance with C & P's claims administration procedures and practices; to issue checks, drawn against C & P's funds, in payment of claims; to prepare monthly and annual reports; and to review each claim that has been denied for compliance with ERISA when the claimant requests such review.

stances reach even the purely administrative activities of insurers,[7] such regulation would not bear upon the "business of insurance" within contemplation of ERISA's insurance saving clause and thus is not saved from preemption by ERISA.

### B. Availability of Extracontractual and Punitive Damages under ERISA.

Having received all of the benefits to which she is entitled, Powell seeks extracontractual and punitive relief under ERISA to compensate her for various alleged physical ailments, the decline of her marriage, her son's emotional distress, and the deterioration of her mental health, on account of the mishandling by C & P and Connecticut General of her disability claim. Powell contends that such extraordinary relief is available under 29 U.S.C. § 1132(a)(3) which authorizes a civil action by a plan beneficiary "(A) to enjoin any act or practice which violates any provision of [ERISA] or the terms of the plan, or (B) *to obtain other appropriate equitable relief,* (i) to redress such violations or (ii) to enforce any provisions of [ERISA] or terms of the plan." (Emphasis added.) In *Massachusetts Mutual Life Insurance Co. v. Russell,* —— U.S. ——, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), the Supreme Court held that extracontractual and punitive damages are not available to a participant or beneficiary under § 1132(a)(2), which authorizes a civil action by the Secretary or by a plan participant, beneficiary, or fiduciary "for appropriate relief under § 1109," which relates to liability for breach of fiduciary duty. The question whether or to what extent extracontractual and punitive relief is authorized by way of the catchall provision in § 1132(a)(3) for "other appropriate equitable relief" was expressly reserved. *Id.* at —— n. 5, 105 S.Ct. 3089 n. 5.

Powell urges that notwithstanding the use of the word "equitable" in § 1132(a)(3) and its implications for excluding the damage remedies she seeks, ERISA incorporates the fiduciary standards and principles of trust law, the violation of which, although ordinarily redressed in equity, may nevertheless give rise to monetary damages in appropriate cases. The legislative history supports Powell's theory that Congress intended to import into ERISA principles of trust law, *see* H.R.Rep. No. 533, 93d Cong., 1st Sess. 11 (1973), U.S.Code Cong. & Admin.News 1974, p. 4639, as does the language of 29 U.S.C. § 1104(a), which expressly incorporates a general "prudent man" standard of care for ERISA fiduciaries.

Powell's argument is self-defeating, however, because even assuming that "other appropriate equitable relief" may, in certain circumstances, include extracontractual or punitive damages, such relief is generally not available in an action by a beneficiary against a trustee for breach of trust. *See* Restatement (Second) of Trusts § 205 (1959) (liability for breach of trust is limited to (a) loss in value of trust estate; (b) profits accrued by trustee; or (c) profits lost to estate); G. Bogert & G. Bogert, the Law of Trusts & Trustees, § 862 (2d ed. 1982) (trustee is usually charged only with the loss in value of the trust estate although exemplary damages are occasionally awarded in a few states where malice or fraud is involved); A. Scott, The Law of Trusts, § 198.1 (1967) ("where the trustee is not under an immediate and unconditional duty to pay money to the beneficiary, the beneficiary cannot maintain an action at law against him."). Thus, the provision for "other appropriate equitable relief," whatever it embraces, cannot be held to authorize extracontractual or punitive damages for the breach of a plan administrator's fiduciary duties under ERISA.[8]

---

7. We express no opinion whether such private causes of action, in another context, would be cognizable under Virginia law. It is worth noting, however, that the Virginia Unfair Trade Practices Act also purports to regulate "the business of insurance in accordance with the intent of Congress" as expressed in the McCarran-Ferguson Act. Va.Code § 38.1–49 (1950).

8. We observe that the maladministration alleged by Powell does not rise to a "willful" violation of ERISA for purposes of the Act's criminal enforcement provision, 29 U.S.C. § 1131.

Accordingly, the district court properly granted the defendants' motions for summary judgment as to Powell's claims for extracontractual and punitive damages under ERISA, and her complaint was properly dismissed.

AFFIRMED.