The INSURANCE BOARD UNDER the SOCIAL INSURANCE PLAN OF BETHLEHEM STEEL CORPORATION AND SUBSIDIARY COMPANIES, and Pennsylvania Blue Shield, Plaintiffs,

v.

William MUIR, Acting Insurance Commissioner of the Commonwealth of Pennsylvania, Defendant.

Civ. A. No. 85–0930.

United States District Court, M.D. Pennsylvania.

June 2, 1986.

Thomas E. Wood, Keefer, Wood, Allen & Rahal, Harrisburg, Pa., Elaine L. Mead, Pennsylvania Blue Shield, Camp Hill, Pa., Kathleen M. Mills, Law Dept., Bethlehem, Steel Corp., Bethlehem, Pa., Douglas D. Connah, Jr., Barbara E. Schlaff, Elizabeth C. Honeywell, Venable, Baetjer & Howard, Baltimore, Md., Gary R. Truitt, Blue Cross of W. Pa., Pittsburgh, Pa., for plaintiffs.

Ellis M. Saull, Deputy Atty. Gen., Harrisburg, Pa., for defendant.

### MEMORANDUM

CALDWELL, District Judge.

#### I. *Introduction.*

Plaintiffs, the Insurance Board Under the Social Insurance Plan of Bethlehem Steel Corporation and Subsidiary Companies (Board), Pennsylvania Blue Shield (Blue Shield) and Blue Cross of Western Pennsylvania (Blue Cross) have, pursuant to Fed.R.Civ.P. 59(e), filed a motion to alter or amend judgment. They seek to have us reverse our memorandum and order of February 28, 1986, *Insurance Board v. Muir,* 628 F.Supp. 1537 (M.D.Pa.1986). We concluded there that certain agreements between the Board and Blue Shield and the Board and Blue Cross were part of the business of insurance and hence subject to regulation by the Pennsylvania Department of Insurance even though the agreements were entered into as part of the Board's responsibility to administer the Social Insurance Plan of Bethlehem Steel Corporation and Subsidiary Companies (Plan) under the Employee Retirement and Income Security Act of 1974 (ERISA). 29 U.S.C. § 1001 *et seq.* The motion, addressed to our sound discretion, *see Quality Prefabrication, Inc. v. Daniel J. Keating Co.,* 675 F.2d 77 (3d Cir.1982); *Florencio Roman, Inc. v. Puerto Rico Maritime Shipping Authority,* 454 F.Supp. 521 (D.P.R.1978), is forcefully, thoroughly and cleverly argued but we must deny it for the reasons set forth below.

#### II. *Discussion.*

A. *The Court Properly Applied the Judicially Created Criteria For Determining What Is the "Business of Insurance" Under the McCarran-Ferguson Act.*

1. *The First Criterion Is Not Necessarily Determinative of What Constitutes the Business of Insurance.*

 As set forth in our previous memorandum, the judicially created criteria for determining what constitutes the "business of insurance" under the McCarran-Ferguson Act, 15 U.S.C. § 1011 *et seq.,* are as follows:

1. whether the practice being considered has the effect of transferring or spreading a policy holder's risk;

2. whether the practice is an integral part of the policy relationship between the insurer and the insured; and

3. whether the practice is limited to entities within the insurance industry.

*Insurance Board, supra* at 1540.

We made no determination concerning the first criterion and plaintiffs claim we erred in not doing so. They argue that insurance must involve the transfer or spreading of risk and when such transfer or spreading is absent, there is no business of insurance which can be regulated. According to plaintiffs the first criterion is an indispensable part of the test and when no risk has been undertaken, there is no need to consider, as we did, the remaining two criteria. Of course, in connection with this argument, plaintiffs assert that the agreements

do not, in fact, impose any risk upon Blue Cross and Blue Shield (sometimes referred to hereinafter collectively as the "Blues") and hence ERISA preempts state regulation.

We disagree with plaintiffs that risk is the essential condition for determining that a practice is the business of insurance and that the remaining two criteria can be ignored once it is determined that risk is absent from the practice or agreement at issue. That all three criteria must be examined could not have been more plainly put by the Supreme Court when it stated in *Union Labor Life Insurance Co. v. Pireno*, 458 U.S. 119, 129, 102 S.Ct. 3002, 3009, 73 L.Ed.2d 647, 656 (1982) (brackets added) that "[n]one of these criteria is necessarily determinative in itself . . . ." Plaintiffs accuse us of taking this statement out of context. They point to other language in that case which, in their view, supports their contention that the element of risk is the crucial factor. Thus, in *Pireno*, the Court stated that "one 'indispensable characteristic of insurance' is the 'spreading and underwriting of a policyholder's risk.'" *Id.* at 127, 102 S.Ct. at 3008, 73 L.Ed.2d at 655 (quoting *Group Life & Health Insurance Co. v. Royal Drug Co.*, 440 U.S. 205, 211–12, 99 S.Ct. 1067, 1073, 59 L.Ed.2d 261, 268 (1979)). Based upon this language, plaintiffs claim that our analysis which passed over the first criterion while concluding that the Blues were engaging in the business of insurance "is contrary to all authority." (Plaintiffs' memorandum in support of the motion for reconsideration at 8). We disagree.

First, *Pireno* itself, as noted by defendant, belies the plaintiffs' argument. In *Pireno*, the Court concluded that the practice at issue there, peer review by chiropractors, did not involve the transfer or spreading of risk. Nevertheless, the Court went on to consider the practice under the remaining two criteria. Additionally, near the end of its opinion in *Pireno*, the Court further made it clear that all three criteria had to be considered. Thus, the Court stated, in regard to the last criterion, that "involvement of [parties outside the insur-

ance industry] . . . constitutes part of the inquiry mandated by the Royal Drug analysis." 458 U.S. at 133, 102 S.Ct. at 3011, 73 L.Ed.2d at 658 (brackets added). Moreover, contrary to plaintiffs' position, the courts have recognized after *Pireno* that all three criteria are relevant to a determination of what constitutes the business of insurance. *See, e.g., United States v. Title Insurance Rating Bureau of Arizona, Inc.*, 700 F.2d 1247 (9th Cir.1983), *cert. denied*, 467 U.S. 1240, 104 S.Ct. 3509, 82 L.Ed.2d 819 (1984); *Hahn v. Oregon Physicians Service*, 689 F.2d 840 (9th Cir.1982), *cert. denied*, 462 U.S. 1133, 103 S.Ct. 3115, 77 L.Ed.2d 1369 (1983); *Maryland v. Blue Cross and Blue Shield Ass'n*, 620 F.Supp. 907 (D.Md.1985); *Trident Neuro-Imaging Laboratory v. Blue Cross and Blue Shield of South Carolina, Inc.*, 568 F.Supp. 1474 (D.S.C.1983); *Nurse Midwifery Associates v. Hibbett*, 549 F.Supp. 1185 (M.D.Tenn. 1982).

Plaintiffs are simply seizing upon one phrase in *Pireno*, risk as an "indispensable characteristic of insurance," without looking to the opinion's rationale as a whole. We recognize that some courts may consider the element of risk as the "primary characteristic of the business of insurance," *Feinstein v. Nettleship Co. of Los Angeles*, 714 F.2d 928, 931 (9th Cir.1983), *cert. denied*, 466 U.S. 972, 104 S.Ct. 2346, 80 L.Ed.2d 820 (1984), and that other courts may not confer as much weight upon the third criterion as they do the first two, *Maryland v. Blue Cross and Blue Shield Association, supra*. We can also concede that, given the correct set of circumstances, we might even consider the first criterion the paramount determining factor. *See, e.g., SEC v. Variable Annuity Life Insurance Co.*, 359 U.S. 65, 79 S.Ct. 618, 3 L.Ed.2d 640 (1958). But clearly all three parts of the test must be considered. Plaintiffs attempt to distinguish *Pireno* by noting that there was an underlying policy of insurance there and hence risk was present, requiring the court to consider the remaining two criteria. There is absolutely no support in *Pireno* for this argument.

The Court was considering only the peer review practice of the insurer and specifically disclaimed any attempt to tie the practice into the underlying insurance policy.

It is easy to understand the plaintiffs' heavy emphasis upon the element of risk taking or transference. Blue Cross and Blue Shield are not insurance companies in the traditional sense and the manner in which they provide coverage for hospital and doctor bills would not appear to involve the risk transference or spreading accompanying the usual insurance policy. *See Jordan v. Group Health Ass'n,* 71 App. D.C. 38, 107 F.2d 239 (1939). The distinction between prepaid health care providers and the typical insurance company was noted by the Court in *Group Life and Health Insurance Co. v. Royal Drug Co.,* 440 U.S. 205, 99 S.Ct. 1067, 59 L.Ed.2d 261 (1979). Significantly, however, in *Royal Drug Co.,* the Court noted that:

> This is not to say that the contracts offered by Blue Shield to it policyholders as distinguished from its provider agreements with participating pharmacies, may not be the "business of insurance" within the meaning of the Act.[1]

*Id.* at 230 n. 37, 99 S.Ct. at 1082 n. 37, 59 L.Ed.2d at 279 n. 37.

The Supreme Court's refusal to conclude that the Blues, while providing prepaid health coverage, are not in the business of insurance has significance here because we do not understand the Blues to be claiming that they are not subject to regulation by Pennsylvania when issuing group insurance policies. They claim only that these particular agreements with the Board, being for administrative services only, are not the business of insurance. We rejected that contention previously because we concluded that the "administrative agreements" were actually group insurance policies issued by the Blues. In doing so, we relied heavily upon the factual allegations supplied by defendant setting forth the close similarity between the Board agree-

ment and the typical Blue Shield group insurance policy. *See Insurance Board, supra* at 1541–42.

In their motion for reconsideration, plaintiffs have not attacked that reliance, choosing instead to focus upon the failure of the Board agreements to affect risk. If plaintiffs are correct, then the logic of their argument is that the Blues are not in the business of insurance at all since no Blue Cross or Blue Shield policy transfers or distributes risk in the fashion that a typical insurance policy does. Under these circumstances, we could choose to address whether the Blues are in the insurance business generally. *See Anglin v. Blue Shield of Virginia,* 693 F.2d 315 (4th Cir.1982). But we need not discuss that issue. We need only recognize that, while the agreements at issue in the instant case do not transfer or spread risk and hence the first criterion is not satisfied, our inquiry does not end there, and we are not precluded from finding that the agreements are the business of insurance if the remaining two criteria are satisfied.

### 2. *The Second Criterion Was Properly Applied.*

Plaintiffs claim that we erred in concluding, "without discussion" (plaintiffs' memorandum in support of their motion for reconsideration at 15), that the Blues were acting as insurers. They again rely upon the absence of risk but, given the above discussion, we reject this argument.

■ Plaintiffs claim that we wrongly relied upon the Blues' use of their existing administrative infrastructure and that our approach would result in state regulation of all ERISA plans administered by companies within the insurance industry. This is plainly wrong. First, we did not rely solely upon the Blues' use of their existing infrastructure although certainly that use played a part in our determination. We also took into account the nature of the administrative fees, that the Board was

---

1. The practice at issue in *Royal Drug* was whether provider agreements between Blue Shield and participating pharmacies was the business of insurance and hence exempt from antitrust regulation.

relying upon the Blues' provider agreements,[2] and that payment for services is made directly by the Blues. We do not want to reiterate our discussion in the previous memorandum on this issue, *see* 628 F.Supp. at 1541–42, but it is clear that we did not just consider the Blues' administrative infrastructure. Additionally, we implicitly noted that, under proper circumstances, a company within the insurance industry could administer a plan without that practice being considered the business of insurance. For example, defendant conceded in making his argument against plaintiff that the Blues' administration of the Medicare program was not the business of insurance.

Plaintiffs have cited *Moore v. Provident Life & Accident Insurance,* 786 F.2d 922 (9th Cir.1986) and *Powell v. Chesapeake & Potomac Telephone Co.,* 780 F.2d 419 (4th Cir.1985). Both of these cases are distinguishable. In *Moore,* Provident, the insurance company, provided only "stop-loss" insurance, covering only those claims in excess of a specified aggregate amount paid out by a trust fund which had the responsibility of paying employee claims. The fund was created by member employers which contributed monthly amounts to cover claims against it. It was administered by a third party administrator which processed claims and paid benefits. The stop-loss insurance was not involved in the litigation and while Provident did retain the privilege to review payments made by the administrator, it obviously had far less involvement in the ERISA plan in *Moore* than the Blues have here. In fact, the Blues' role in the instant case corresponds to the third party administrator's rather than Provident's role in *Moore.* But, in *Moore,* unlike here, payment was from the trust fund, not from the administrator. Similarly, in *Powell,* Connecticut General Life Insurance Company, the plan administrator, paid claims by drawing checks against the employer's funds. Significant-

ly, an insurance company was involved in *Powell* so that the court did not have to face, as we did, the similarities between the administrative agreements and the Blues' group insurance policies.

3. *The Court Properly Applied the Third Criterion Which Focuses On Entities and Not the Practice At Issue.*

Plaintiffs contend that the focus of the third criterion is on the practice itself and not on the entities involved in the practice. According to plaintiffs, if a practice is commonly performed by entities outside the insurance industry, it is indicative that it is not the business of insurance. They point out that administration of ERISA plans are commonly performed by such entities. We disagree with plaintiffs' interpretation of the third criterion. This part of the test was intended to focus on the entities involved and not the practice. This is evident from *Pireno, supra,* cited in support of plaintiffs' argument. In *Pireno,* the challenged practice, as noted previously, was the use of chiropractic services. In discussing the third criterion, the Supreme Court stated as follows:

Finally, as respects the third Royal Drug criterion, it is plain that the challenged peer review practices are not limited to entities within the insurance industry. *On the contrary, ULL's use of NYSCA's Peer Review Committee inevitably involves third parties wholly outside the insurance industry—namely, practicing chiropractors....*

We may assume that the challenged peer review practices need not be denied the § 2(b) exemption *solely* because they involve parties outside the insurance industry. *But the involvement of such parties, even if not dispositive, constitutes part of the inquiry mandated by the Royal Drug analysis.* As the Court noted there, § 2(b) was intended primari-

---

2. In *Rebaldo v. Cuomo,* No. 83 Civ. 8707 (S.D. N.Y. March 13, 1984), while not material to the court's determination, the ERISA program at issue there had cancelled its agreement with Blue Cross, became a self-insurer and self-administrator, and entered into its own provider agreements with over 100 area hospitals.

ly to protect *"intra*-industry cooperation" in the underwriting of risks. 440 US, at 221, 59 L Ed 2d 261, 99 S Ct 1067 (emphasis added). Arrangements between insurance companies and parties outside the insurance industry can hardly be said to lie at the center of that legislative concern.

*Id.* 458 U.S. at 132–33, 102 S.Ct. at 3010–11, 73 L.Ed.2d at 658–59 (emphasis added in part).

In applying the third criterion, other courts have focused on the parties rather than the practice. *See Maryland v. Blue Cross and Blue Shield Ass'n, supra; Homestead Mobile Homes, Inc. v. Foremost Corporation of America,* 603 F.Supp. 767 (N.D.Tex. 1985); *Trident Neuro-Imaging Laboratory, supra.* Hence, we reject plaintiffs' contention.

Plaintiffs complain that our decision to place the Board and the Plan under indirect regulation imposes a great burden upon them. In our view, the greatest difficulty posed by this case concerns the threat to uniform benefits, the purpose of the pre-emption provision, brought about by requiring the Plan to conform to the requirements of state law. That threat, however, was not caused by this court's decision but, rather, by Congress's desire to preserve the state regulation of insurance in ERISA's saving clause, 29 U.S.C. § 1144(b)(2). *See Metropolitan,* — U.S. at —, 105 S.Ct. 2380, 2393, 85 L.Ed.2d 728, 745 (disuniformities facing national plans which purchase local insurance are the inevitable result of the congressional decision to save local insurance regulation). The language of the court in *Board of Trustees of the Montana Teamsters Employers v. Coyne,* 628 F.Supp. 561 (D.Mont. 1986) is *apropos* here:

> Congress ... in enacting the "insurance savings" clause, has seen fit to allow the several states to retain their traditional role in regulating insurance even though that regulation touches upon welfare benefit plans within the purview of ERISA. Although the logic of the distinction created by the "deemer" clause with respect to "insured" and "uninsured" plans may escape this court, any change designed to remove the distinction must emanate from Congress, not the courts.

*Id.* at 563–54.

We will issue an appropriate order.