Donald W. **MACKEY**, Plaintiff,

v.

The **PRUDENTIAL INSURANCE COMPANY OF AMERICA** and the National Rural Electric Cooperative Association, Defendants.

No. CV 84–229–M.

United States District Court,
D. Montana,
Missoula Division.

Oct. 20, 1986.

---

Terry Trieweiler, Whitefish, Mont., Joseph Daley, Kalispell, Mont., for plaintiff.

Gary L. Graham, Sherman Lohn, Missoula, Mont., for defendants.

## OPINION AND ORDER

LOVELL, District Judge.

### INTRODUCTION

This is an action to reinstate disability benefits and recover extra-contractual and punitive damages allegedly arising from the Defendants' wrongful termination of the Plaintiff's disability benefits. Plaintiff is a citizen of the State of Montana. Prudential Insurance Company of America is a corporation organized and existing under the laws of the State of Pennsylvania and having no principal place of business in Montana. The National Rural Electric Cooperative Association is a nonprofit corporation organized and existing under the laws of the District of Columbia and having its principal place of business in Washington, D.C. As the amount in controversy in this action exceeds $10,000, jurisdiction is conferred upon this Court by 28 U.S.C. § 1332.

Defendants present three motions: 1) to recaption the cause to show the appropriate name of the real party in interest, the National Rural Electric Cooperative Association Group Benefits Trust [hereinafter Group Benefits Trust]; 2) to limit Plaintiff's recovery for disability benefits to that provided pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C.A. §§ 1001–1461 (Law. Co-op 1982 & Supp.1986) [ERISA]; and 3) for summary judgment on Plaintiff's extra-contractual and punitive damage claims.

### FACTS

Plaintiff was a long-time employee of Flathead Electric Co-op, Inc. After serving the Co-op in various capacities, Mackey left work because of his disability on April 16, 1982. Mackey received total disability payments from July 20, 1982, until July 19, 1984, when his payments were terminated. Plaintiff filed this action November 19, 1984, seeking reinstatement of benefit payments and damages allegedly occurring as a result of Defendants' breach of the implied covenant of good faith and fair dealing including punitive damages.

Prior to August 1, 1981, the Co-op's employee benefit plan was insured through Prudential. Following that date the Group Benefits Trust assumed responsibility for disability benefits. After August 1, 1981, Prudential's role in the benefits was reduced to providing administrative services for the trust. Prudential continued to assist with claims administration and benefit payments processing until August 1, 1984, when Cooperative Benefit Administrator took over that responsibility.

## BACKGROUND

Congress, in an attempt to protect employees' benefit rights, passed ERISA in 1974. Congress perceived "a lack of employee information and adequate safeguards concerning [the operation of employee benefit plans.]" § 1001. Congress was also concerned with the number of American workers and their families who were losing anticipated retirement benefits due to the inadequacy of benefit plans' vesting provisions, minimum standards, and financial soundness and stability.

To protect employees and their beneficiaries, Congress established requirements for plan reporting and disclosure, §§ 1021–1031; standards for participation and vesting, §§ 1051–1061; minimum funding standards, §§ 1081–1086; and standards for fiduciaries, §§ 1101–1114.

As Congress granted employees these rights with one hand, it limited employees' power to enforce these rights with the other hand. Section 1132 enumerates the specific claims which may be brought under the Act. ERISA permits a participant to bring a civil action to recover benefits due; to enforce rights under the plan; to clarify future rights under the plan; to redress losses resulting from a fiduciary's breach of his duty; for appropriate relief from an administrator's failure to comply with the reporting provisions; and for injunctive or other relief to correct violations of ERISA. 29 U.S.C.S. § 1132(a), (c); *see also* §§ 1109, 1025.

Not only did Congress restrict civil actions to enforce ERISA, but it expressly superseded state laws which relate to covered employee benefit plans. 29 U.S.C.S. § 1144. The scope and extent of this so-called "pre-emption provision" is the focus of the motion for summary judgment now before this Court.

## LAW AND DISCUSSION

### I. MOTION TO RECAPTION.

■ First among Defendants' consolidated motions is a request to recaption the cause to reflect the appropriate name of the real party in interest—the National Rural Electric Cooperative Association Group Benefits Trust. Plaintiff's complaint, and all subsequent documents, identify the National Rural Electric Cooperative Association as a party defendant.

At no point has Plaintiff opposed or briefed this issue. Under R.P.D.Mont. 220–1, failure to file a brief in opposition to a motion is deemed an admission by the adverse party that the motion is well taken. Thus, the caption of this case will be amended to accurately state the name of the real party in interest.

### II. MOTION FOR SUMMARY JUDGMENT.

The pre-emption provision provides, "Except as provided in subsection (b) of this section, the provisions of this title ... shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." § 1144(a).

This general rule is modified by the exception found in § 1144(b)(2)(A). This exception, referred to as the "saving clause," reads, "Except as provided in subparagraph (B), nothing in this title shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities."

The saving clause is, in turn, modified by the "deemer clause" found in § 1144(b)(2)(B). The deemer clause provides, "Neither an employee benefit plan described in [§ 1003(a)], which is not exempt under [§ 1003(b)] ... nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer ... or to be engaged in the

business of insurance ... for purposes of any law of any State purporting to regulate insurance companies...."

These three clauses have engendered a considerable amount of litigation. This case is another examination of the scope of the pre-emption, savings, and deemer clauses. Specifically, the question presented is whether ERISA's pre-emption provision precludes Plaintiff's extra-contractual and punitive damages claims when the employee benefit plan is self-insured, but an insurance company administers the plan and made the decision to terminate the Plaintiff's benefits.

To prevail on a motion for summary judgment, the moving party must demonstrate the absence of a genuine issue of material fact and must establish a right to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 901–02 (9th Cir.1983). Nowhere in his *Brief in Opposition to Defendant's Motion for Summary Judgment* or his *Reply to Oral Argument Regarding Summary Judgment* does Mackey assert that there exists any issue of fact which prohibits this Court from deciding this motion solely on the legal arguments presented. The facts here are sufficiently developed to render a decision on the law.

This analysis must begin with a determination of whether ERISA governs the Group Benefits Trust. Prudential asserts, and Mackey does not refute, that the Group Benefits Trust falls within ERISA's provisions. From the coverage formula expressed in section 1003 [1] and the definitional section section 1002, it is apparent that ERISA controls this question.

There are two ways to approach this motion: (1) by analyzing the particular capacities of each of the defendants and their individual susceptibility to Plaintiff's claims; and (2) by analyzing the legal merit of the claims themselves. This bifurcated analysis will follow in parts A and B below.

### A. *Defendants susceptibility to suit in their individual capacities.*

This discussion is most clearly presented by analyzing the summary judgment motion with respect to Group Benefits Trust independently of the summary judgment with respect to Prudential. Therefore, this discussion will begin with an examination of the law as it applies to Group Benefits Trust. Then the examination will turn to a discussion of the law as applied to Prudential.

### 1. The law as applied to Group Benefits Trust.

Determining whether the Group Benefit Trust was self-insured or funded through some external insurer is the critical factor in the pre-emption analysis with respect to Group Benefits Trust. The affidavit of Martin D. Wood, Director of the Retirement, Safety and Insurance Department of the National Rural Electric Cooperative Association, states that as of August 1, 1981, the Group Benefits Trust

---

**1.** Section 1003 provides: "Except as provided in subsection (b) and in [29 U.S.C. § 1051, 1081, and 1101] this title shall apply to any employee benefit plan if it is established or maintained—
(1) by any employer engaged in commerce or in any industry or activity affecting commerce; or
(2) by any employee organization or organizations representing employees engaged in commerce or in any industry or activity affecting commerce; or
(3) by both."
Subsection 1003(b) exempts governmental, church, workers' compensation, and excess benefit plans, as well as plans maintained outside of the United States primarily for nonresident aliens.
Section 1002 provides: "For purposes of this title:

(1) The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services...."

provided participants with long-term disability benefits on an uninsured basis. While Mackey was receiving disability payments (July 20, 1982 until July 19, 1984), the Group Benefits Trust was uninsured and Prudential merely provided administrative services to plan participants. *Affidavit of Martin D. Wood,* 2–3.

The leading case in the ERISA pre-emption arena is *Metropolitan Life Insurance Co. v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985). In this case the United States Supreme Court examined a Massachusetts statute requiring plans covering hospital and surgical care to provide minimum mental health protection as well. Metropolitan challenged the statute, arguing that ERISA's pre-emption provision forbids such mandated-benefit statutes. The Court upheld the regulation as applied to Metropolitan Insurance Company, but added a note on the insured/uninsured distinction important here. Justice Blackman, writing for the unanimous Court noted:

> We are aware that our decision results in a distinction between insured and uninsured plans, leaving the former open to indirect regulation while the latter are not. By so doing we merely give life to a distinction created by Congress in the "deemer clause," a distinction Congress is aware of and onc it has chosen not to alter. * * * Arguments as to the wisdom of these policy choices must be directed at Congress.

*Id.* at 747, 105 S.Ct. at 2393, 85 L.Ed.2d at 745 (footnote omitted). *Metropolitan Life* stands for the proposition uninsured benefit plans are not subject to state insurance regulation and are only subject to regulation expressed in ERISA.

Applying this decisive distinction, the Ninth Circuit Court of Appeals recently reviewed a case much like the instant case. In *Moore v. Provident Life & Accident Insurance Co.,* 786 F.2d 922 (9th Cir.1986), the plaintiff sought back benefit payments and punitive damages for alleged violations of ERISA and California insurance law. Moore's benefits were terminated when the plan administrator discovered Moore was no longer employed by a member employer as required. Moore alleged Provident breached the covenant of good faith and fair dealing and its fiduciary responsibilities. Moore also asserted a fraud claim and charged Provident with violating the California Insurance Code. *Id.* at 924–25.

Moore argued Provident is an insurance company subject to state insurance regulation because the savings clause precludes pre-emption. The defendants argued that the plan was an uninsured employee benefit plan which merely purchased excess insurance from Provident. Consequently, the defendants argued the deemer clause prevents the trust fund from being deemed an insurance company for ERISA pre-emption. *Id.* at 926.

The Ninth Circuit Court of Appeals held Moore's state common law claims, as well as the alleged violations of the insurance code, were pre-empted by ERISA. Relying upon the distinction between insured an uninsured plans found in Metropolitan Life, the court held the self-insured employee benefit plan fell squarely within the deemer clause. Since the plan was controlled by the deemer clause, the only permissible regulation was by ERISA itself, and the plaintiff's claims against the trust were pre-empted. *Id.* at 927.

The clear pronouncements of the United States Supreme Court in *Metropolitan Life* and of the ninth circuit in *Moore* foreclose any state law actions against Group Benefits Trust. As an uninsured plan, ERISA's deemer clause precludes application of the saving clause and all "extra-ERISA" claims against Group Benefits Trust are pre-empted.

2. The law as applied to Prudential.

The next step of this analysis is an examination of ERISA and recent case law as applied to Prudential. As noted above, Prudential's role in the plan when the alleged action accrued was that of a mere administrator—not an insurer *per se.*

In *Moore* the court noted Congress' intent in passing ERISA's savings clause was to preserve states' rights to regulate insurance. The court added, however, the

states' rights to regulate insurance are limited to contracts of insurance and their right to regulate only applies when an insurance company is actually engaged in the business of insurance. In that case Provident's role was restricted to that of an administrative overseer, purely administrative and having nothing to do with the insurance business *per se*. Thus the court concluded Provident was not an insurance company for purposes of ERISA's saving clause. *Id.* at 926–27. An insurance company's authority to review a plan administrator's actions on a claim and to defend or settle a claim "does not require a finding [the insurer] was engaged in the business of insurance in relation to the Plan." *Id.* at 927.

In support of his claim against Prudential, Mackey argues, "Prudential is an insurance company subject to laws in the State of Montana that regulate how insurance companies must act in adjusting claims." *Brief for Plaintiff* at 8. Mackey attempts to distinguish *Moore* by pointing out that here the decision to terminate Mackey came directly from Prudential. Plaintiff argues that Prudential's termination of Mackey was the type of practice Montana attempted to regulate through the Unfair Trade Practices Act which regulates "the business of insurance in accordance with the intent of Congress as expressed [in the McCarran-Ferguson Act 15 U.S.C. § 1011–15]."[2] Mont.Code Ann. § 33–18–101 (1985). In light of the following authority, this distinction is not well taken.

The Fourth Circuit Court of Appeals reviewed a case much like Mackey's in *Powell v. Chesapeake & Potomac Telephone Co.*, 780 F.2d 419 (4th Cir.1985). Powell brought claims for breach of the implied covenant of good faith and fair dealing and for violations of the Virginia Unfair Trade Practices Act against her self-funded employee benefit plan and the insurance company that administered the plan. Powell

argued these claims were saved from ERISA pre-emption. *Id.* at 422–23.

The court rejected this argument both as to the uninsured plan and the insurance company administrator because the saving clause applies only to insurance companies engaged in the business of insurance. *Id.* at 423–24.

The United States Supreme Court stated, "The primary elements of an insurance contract are the spreading and underwriting of a policyholder's risk." *Group Life & Health Insurance Co. v. Royal Drug Co.*, 440 U.S. 205, 211, 99 S.Ct. 1067, 1073, 59 L.Ed.2d 261, 268 (1979). In the instant case, Prudential could be considered engaged in the business of insurance if it spread the Group Benefit Trust's risks.

In *Powell* the Fourth Circuit Court of Appeals wrote:

> In its role as Plan administrator, Connecticut General neither spreads nor underwrites insurance risks; there is no insurance policy or contract. Rather, Connecticut General provides certain purely administrative claims processing functions pursuant to an administrative services agreement with the Plan's sponsor, C & P. Thus, notwithstanding that Virginia's implied covenant of fair dealing and Unfair Trade Practices Act may in some circumstances reach even the purely administrative activities of insurers, such regulation would not bear upon the "business of insurance" within contemplation of ERISA's insurance saving clause and thus is not saved from preemption by ERISA.

*Powell* at 423–24.

 The factual parallels and the strength of the fourth circuit's reasoning in *Powell* compel the conclusion that as Group Benefit Trust's administrator, Prudential was not engaged in the business of insurance. Accordingly, Mackey's position is rejected, and I find that Mackey's state law

---

**2.** In the McCarran-Ferguson Act Congress sought to assure states' rights to regulate and tax "the business of insurance." 15 U.S.C. §§ 1011, 1012(a). The statute provides: "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the

purpose of regulating the business of insurance ... unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1012(b). *Group Life and Health Insurance Co. v. Royal Drug Co.*, 440 U.S. 205, 217–18, 99 S.Ct. 1067, 1076–77, 59 L.Ed.2d 261, 272 (1979).

claims against Prudential are pre-empted by ERISA.

#### B. *Legal merits of Plaintiff's claims.*

Section 1144 states ERISA pre-empts any state law which "relate[s] to" any employee benefit plan. Congress' purpose was to provide for "minimum, uniform national standards for employee benefit plans and to provide for uniform remedies in the enforcement of the plans." *Dependahl v. Falstaff Brewing,* 653 F.2d 1208, 1215 (8th Cir.) *reh'g and reh'g en banc denied, cert. denied,* 454 U.S. 1084, 102 S.Ct. 641, 70 L.Ed.2d 619 (1981). Given this clear Congressional purpose, all state laws which relate to employee benefit plans are pre-empted. *Id.*

The breadth of the term "relates to" was addressed in *Shaw v. Delta Airlines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). The Court wrote, "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw* at 96–97, 103 S.Ct. at 2900, 77 L.Ed.2d at 501. Noting Congress employed the words "relates to" in their "broad sense," the Court added the scope of pre-emption extends beyond state laws "specifically designed to affect employee benefit plans." *Id.* at 98, 103 S.Ct. at 2900, 77 L.Ed.2d at 501–02. Thus, ERISA pre-empts nearly all state laws which have a connection with or reference to an employee benefit plan. *Contra, Lane v. Goren,* 743 F.2d 1337, 1339 (9th Cir.1984) ("Although the preemptive effect of ERISA is broad, it is not all-encompassing.").

Many plaintiffs recently have raised varied state law claims which have been adjudged to relate to employee benefit plans and therefore were pre-empted by ERISA. Following are some of the most recent state law claims rejected by the Ninth Circuit Court of Appeals due to ERISA pre-emption: (1) arbitrary and capricious conduct of fiduciary, *Ellenburg v. Brockway, Inc.,* 763 F.2d 1091 (9th Cir.1985); (2) breach of contract, *Sorasky v. Burroughs,* 798 F.2d 1274 (9th Cir.1986), *Blau v. Del Monte Corp.,* 748 F.2d 1348 (9th Cir.1984) (as amended 1985), *Lafferty v. Solar Turbines International,* 666 F.2d 408 (9th Cir. 1982); (3) breach of contract implied in fact, *Blau;* (4) breach of employment agreement, *Scott v. Gulf Oil Corp.,* 754 F.2d 1499 (9th Cir.1985); (5) breach of fiduciary duty, *Moore v. Provident Life and Accident Insurance Co.,* 786 F.2d 922 (9th Cir.1986), *Ellenburg, Scott;* (6) breach of implied covenant of good faith and fair dealing, *Moore, Ellenburg, Scott;* (7) conspiracy, *Sorasky;* (8) equitable estoppel, *Ellenburg;* (9) estoppel by conduct, *Moore, Blau;* (10) fraud and deceit, *Moore, Scott, Blau;* (11) misrepresentation by fiduciary, *Kuntz v. Reese,* 760 F.2d 926 (1985) *vacated and withdrawn,* 785 F.2d 1410 (9th Cir. 1986); (12) promissory estoppel, *Blau;* (13) trust's refusal to honor assignment of benefits to dentist who performed services for trust beneficiaries, *Misic v. Building Service Employees Health and Welfare Trust,* 789 F.2d 1374 (9th Cir.1986); (14) unfair insurance practices, *Moore;* (15) untimely or improper claims processing, *Russell v. Massachusetts Mutual Life Insurance Co.,* 722 F.2d 482 (9th Cir.1983); (16) violation of public policy, *Scott;* (17) violation of insurance code, *Moore;* and (18) wrongful and malicious denial of employment benefits, *Clorox Co. v. United States District Court for the Northern District of California,* 779 F.2d 517 (9th Cir.1985).

Plaintiff's claim alleges Defendants wrongfully withheld benefits (*see Russell* ), breached the implied covenant of good faith and fair dealing (*see Moore, Ellenburg,* and *Scott* ), failed to make an adequate investigation (*see Russell* ), misrepresented pertinent facts (*see Kuntz* ), and compelled Plaintiff to institute litigation. Each of these claims, with the exception of the last, is controlled by one or more of the ninth circuit cases cited. It is not illogical to conclude that the ninth circuit court would reject a claim based on being compelled to litigate, as well.

For these reasons, I find no merit to Plaintiff's extra-contractual state law claims, and Defendants' motion for summary judgment on those claims is well taken.

Defendants also seek summary judgment on the issue of the availability of punitive damages based upon the state causes of action. The ninth circuit expressly held punitive damages based on state claims do not lie in an ERISA action. *Russell v. Massachusetts Mutual Life Insurance Co.*, 722 F.2d 482 (9th Cir.1983). Consequently, Defendants are entitled to summary judgment on this issue as well. However, plaintiff may yet pursue any claim he may have through the remedial provisions of ERISA itself. *Scott v. Gulf Oil Corp.*, 754 F.2d 1499 (9th Cir.1985).

It appearing that Plaintiff's state law claims are pre-empted both by the Defendants' immunity to suit in their individual capacities and by ERISA pre-emption of Plaintiff's state law claims,

It is HEREBY ORDERED Defendants' motion for summary judgment on Plaintiff's state law claims is GRANTED and Plaintiff's recovery, if any, shall be limited to that provided in ERISA.

It is FURTHER ORDERED the caption of this case is corrected to accurately reflect the appropriate name of the real party in interest, National Rural Electric Cooperative Group Benefits Trust.