Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| COMPAÑÍA DE FOMENTO INDUSTRIAL DE PUERTO RICO

Recurrida

v.

MOTOPAC, CORP.; DEFPAC CORPORATION; **TRIPLE-S PROPIEDAD, INC.**; COMPAÑÍA ASEGURADORA ABC; COMPAÑÍA ASEGURADORA XYZ; COMPAÑÍA ABC; FULANO DE TAL

Peticionaria

· · · · · · · · · · · · · · · · · · · · · ·

MOTOPAC, CORP.; DEFPAC CORPORATION; TRIPLE-S PROPIEDAD, INC.; COMPAÑÍA ASEGURADORA ABC; COMPAÑÍA ASEGURADORA XYZ; COMPAÑÍA ABC; FULANO DE TAL

v.

LA CASA DEL CAMIONERO, INC., Y OTROS | KLCE202301099 | *Certiorari*
Procedente del Tribunal de Primera Instancia, Sala de BAYAMÓN

Caso Núm.:
BY2018CV02412 consolidado con BY2019CV04781

Sobre:
Entredicho Provisional, Daños, Injunction permanente, Daños y Perjuicios Contractuales, Incumplimiento de Contrato |

Panel integrado por su presidente el Juez Figueroa Cabán, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Mateu Meléndez, Jueza Ponente

### **RESOLUCIÓN**

En San Juan, Puerto Rico, a 31 de enero de 2024.

Comparece ante nos Triple-S Propiedad, Inc. (en adelante Triple-S o la peticionaria) mediante un recurso de *Certiorari* en el que solicita la revocación de la *Resolución* emitida el 16 de agosto de 2023, notificada el 17, por el Tribunal de Primera Instancia, Sala de Bayamón (en adelante TPI o

Número Identificador

RES2024 _____

foro recurrido). Por virtud del aludido dictamen, el TPI declaró *No Ha Lugar* la *Moción de Sentencia Sumaria* sometida por la peticionaria.

Examinado el expediente ante nos, en virtud del derecho aplicable que más adelante consignamos, **denegamos** expedir el auto de *Certiorari* solicitado. Veamos.

**-I-**

El caso de epígrafe inició con una demanda instada por la Compañía de Fomento Industrial de Puerto Rico (en adelante PRIDCo), por incumplimiento de contrato de arrendamiento y daños y perjuicios, contra varios demandados, entre éstos Motopac Corp. (en adelante Motopac), Defpac Corporation (en adelante Defpac) y su compañía aseguradora Triple-S.[1] En síntesis, PRIDCo adujo que, un incendio, provocó un derrame de aceite de motor, lubricantes y otras sustancias, ocasionando daños físicos, estructurales en una propiedad que arrienda a Motopac y Defpac. Asimismo, alegó la ocurrencia de daños ambientales en cuerpos de agua y otras áreas aledañas a la misma. Según se indicó en la *Demanda*, la propiedad arrendada está localizada en la carretera PR-28 de la Zona Luchetti en Bayamón, Puerto Rico.

Motopac y Defpac por su parte, instaron un pleito independiente en contra de La Casa del Camionero, Inc. (en adelante LCC) y otros demandados, en la cual alegan que incurrieron en gastos por la limpieza inicial de la emergencia ambiental, reubicación de labores y defensa legal del pleito instado por PRIDCo.[2] Así las cosas, el foro recurrido ordenó la consolidación de ambos casos civiles.[3]

Luego de varios trámites procesales, el 11 de octubre de 2022, Triple-S sometió una *Moción solicitando sentencia sumaria* sobre el caso civil BY2018CV02412. En esta, sostuvo la existencia de la póliza de seguro

---

[1] Apéndice de la parte peticionaria, págs. 1 – 79.
[2] Apéndice de la parte peticionaria, págs. 172 – 180.
[3] Apéndice de la parte peticionaria, págs. 199.

número 30-CP-81090156-1 a favor de Motopac. Además, señaló que en dicha póliza Defpac era un asegurado adicional y reclamó la ausencia de causa de acción en la *Demanda* que pueda estar cubierta por los términos y condiciones de la póliza expedida, por lo que debía desestimarse.

El 10 de noviembre de 2022, PRIDCo se opuso a la moción dispositiva. Al así hacerlo, adujo que es un tercero para efectos de la cubierta de la póliza de seguro.[4] Además, argumentó que la Cláusula de Exclusión de Contaminación 2(f) de la forma *Commercial General Liability* de la Póliza no era aplicable porque la contaminación no fue la causa del daño, sino que el derrame se debió al incendio.

Posteriormente, el 17 de noviembre de 2022, Triple-S presentó una *Moción solicitando se dicte sentencia sumaria a tenor con la Regla 36.2 de Procedimiento Civil de 2009,* dirigida a obtener la desestimación de la reclamación que Motopac y Defpac instaron contra La Casa del Camionero (Civil Núm. BY2019CV04781). En dicho escrito, sostuvo que no existía controversia sobre once (11) hechos. Basándose en estos, y por las razones específicas señaladas en su escrito, Triple-S negó que la póliza que emitió a favor de A1 Generator cubra los daños a la estructura arrendada por Motopac a PRIDCo. Así, en virtud de tal inaplicabilidad, sostuvo la ausencia de una causa de acción en la *Demanda* que pueda estar cubierta por los términos y condiciones de la póliza expedida.[5] Sobre este último, Triple-S alegó que no respondía por los daños causado por ser el daño ocurrido uno de naturaleza ambiental, expresamente excluido de la cubierta de la póliza de seguro.

El 11 de enero de 2023, Motopac y Defpac sometieron *Oposición a "Moción solicitando se dicte sentencia sumaria a tenor con la Regla 36.2 de Procedimiento Civil de 2009"*, en la que sostuvieron que los daños reclamados

---

[4] Apéndice de la parte peticionaria, págs. 962 – 993.
[5] Apéndice de la parte peticionaria, págs. 210 – 950.

no son contractuales, sino que por las actuaciones negligentes de AI Generator se constituyeron daños a la propiedad rentada al asegurado. [6] Evaluadas las posiciones de las partes, el TPI emitió *Resolución* en la cual determinó *No Ha Lugar* a la *Moción Solicitando Sentencia Sumaria*.[7] Específicamente, al resolver denegar las mociones dispositivas, el foro recurrido enunció lo que a continuación transcribimos:

> La cláusula citada expresamente excluye contaminantes solo cuando: "bodily injury" or "property damage" (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, realease or escape of "pollutants". La exclusión no aplica a un incendio, como el ocurrido en el presente caso. Más aún, la exclusión se activa únicamente si la causa del daño a la propiedad es un evento de contaminación ambiental. El uso de la frase "arising out" para describir el elemento de causalidad es clave, porque requiere que se establezca que el daño a la propiedad no habría surgido a no ser por el derrame de contaminantes. Ahora bien, el caso ante nos, distinguible toda vez que el daño a la propiedad surgió por causa del incendio.
>
> El daño a la propiedad causado por el incendio fue el que posibilitó el derrame de aceite, lubricantes y otras sustancias contaminantes que Motopac y Defpac tenían almacenadas en la propiedad arrendada a PRIDCO. El evento de contaminación ambiental fue una de las consecuencias, y no la causa, del incendio. Por lo anterior, no es aplicable la exclusión de contaminación ("pollution") aludida por Triple-S. Como toda exclusión en un contrato de seguro, la de "pollution" en la póliza emitida por Triple-S debe ser interpretada restrictivamente a favor de la parte asegurada con el propósito de garantizarle la mayor protección posible. Monteagudo Pérez v. ELA, 172 DPR 12 (2007).
>
> En resumen, concluimos que en el presente caso la póliza emitida por Triple-S cubre todos los daños alegados en la demanda presentada por PRIDCO y no procede desestimar la reclamación respecto a la aseguradora en el caso civil núm. BY2018CV02412. [8]

No conforme con lo resuelto por el foro primario, la peticionaria presentó ante este Tribunal de Apelaciones el recurso de epígrafe, en el cual enunció el siguiente señalamiento de error:

> ERRÓ EL TPI AL DENEGAR LAS PETICIONES DE SENTENCIA SUMARIA PRESENTADAS POR TPS [Triple-S] EN LOS CASOS CONSOLIDADOS BY2018CV02412 Y BY2019CV04781 Y DETERMINAR QUE LAS PÓLIZAS DE SEGURO NÚMERO 30-CP-81090156-1 Y 30-CP-81093339-0, EMITIDAS POR TRIPLE-S PROPIEDAD, INC. A FAVOR DE MOTOPAC CORP Y DEFPAC CORPORATION, PROVEEN CUBIERTA PARA DAÑOS

---

[6] Apéndice de la parte peticionaria, págs. 1047 – 1108.
[7] Apéndice de la parte peticionaria, págs. 1203 – 1230.
[8] *Íd.* en las págs. 1226 – 1227.

RESULTANTES DE CONTAMINACIÓN AMBIENTAL ("POLLUTION").

Atendido el recurso, el 11 de octubre de 2023, emitimos *Resolución* mediante la que concedimos a las partes recurridas un término para expresarse en cuanto a este. El término concedido fue prorrogado en varias ocasiones ante diferentes solicitudes de prórrogas sometidas individualmente por las distintas partes debido a la probabilidad de alcanzar un acuerdo transaccional. Pendiente de vencer uno de los términos concedidos, PRIDCo compareció el 7 de diciembre de 2023 y sometió su *Oposición a que se expida el auto de certiorari*. Ante la presentación de este escrito, el 8 de diciembre de 2023, le ordenamos a Motopac y Defpac informarnos del estatus del acuerdo transaccional. En cumplimiento con ello, el 14 de diciembre de 2023 sometieron *Moción en cumplimiento de orden.* Posteriormente, el 22 de diciembre de 2023, presentaron su *Oposición a Petición de certiorari*.

Con el beneficio de la comparecencia de las partes, damos por sometido el asunto y estando listos para resolver, así lo hacemos.

II

**-A-**

El vehículo procesal de *certiorari* permite a un tribunal de mayor jerarquía a revisar discrecionalmente las órdenes o resoluciones interlocutorias emitidas por una corte de inferior instancia judicial. McNeil Healthcare v. Mun. Las Piedras I, 206 DPR 391, 403 (2021); 800 Ponce de León v. AIG, 205 DPR 163 (2020). La determinación de expedir o denegar este tipo de recursos se encuentra enmarcada dentro de la discreción judicial. *Íd.* De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". Medina Nazario v. McNeil Healthcare LLC, 194 DPR 723, 729 (2016). Empero, el ejercicio de la discreción concedida "no implica

la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho." *Íd*.

Ahora bien, en los procesos civiles, la expedición de un auto de *certiorari* se encuentra delimitada a las instancias y excepciones contenidas en la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1. McNeil Healthcare v. Mun. Las Piedras I, *supra*; Scotiabank v. ZAF Corp et al., 202 DPR 478 (2019). La mencionada Regla dispone que solo se expedirá un recurso de *certiorari* cuando "se recurra de una resolución u orden bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57 o de la denegatoria de una moción de carácter dispositivo." 800 Ponce de León v. AIG, *supra*. Asimismo, y a manera de excepción, se podrá expedir este auto discrecional cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, en asuntos relacionados a privilegios evidenciarios, en casos de anotaciones de rebeldía, en casos de relaciones de familia, en casos revestidos de interés público o en cualquier situación en la que esperar a una apelación constituiría un fracaso irremediable de la justicia." McNeil Healthcare v. Mun. Las Piedras I, *supra*.

El examen de estos autos discrecionales no se da en el vacío o en ausencia de otros parámetros. McNeil Healthcare v. Mun. Las Piedras I, *supra*, a la pág. 404; 800 Ponce de León v. AIG, *supra*. Para ello, la Regla 40 de nuestro Reglamento establece ciertos indicadores a tomar en consideración al evaluar si se debe o no expedir un recurso de *certiorari*.[9] Estos, pautan el ejercicio sabio y prudente de la facultad discrecional judicial. Mun. de Caguas v. JRO Construction, 201 DPR 703, 712 (2019). La

---

[9] Estos son: si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho; si la situación de hechos planteada es la más indicada para el análisis del problema; si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia; si el asunto planteado exige una consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados; si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración; si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio; si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

delimitación que imponen estas disposiciones reglamentarias tiene "como propósito evitar la dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación." Scotiabank v. ZAF Corp. et al., *supra*, págs. 486-487; Mun. de Caguas v. JRO Construction, *supra*.

**-B-**

La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V., R. 36, regula todo lo concerniente a la moción de sentencia sumaria- mecanismo procesal que se utiliza en aquellos litigios que no presentan controversias genuinas de hechos materiales y que, por consiguiente, no ameritan la celebración de un juicio en su fondo. Cruz Vélez v. CEE, 206 DPR 694 (2021) al citar a Mejías Montalvo v Carrasquillo Martínez, 185 DPR 288, 299 (2012) y otros. Esta regla, establece que un demandante podrá presentar dicha moción siempre y cuando esté fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes. *Íd.*, al mencionar a Bobé v. UBS Financial Services, 198 DPR 6, 20 (2017) y demás casos allí citados.

La Regla 36.2 y 36.3 del discutido cuerpo reglamentario, 32 LPRA Ap. V, R.36.2-36.3, disponen los requisitos de forma que deberá observar la parte promovente de una solución por la vía sumaria. La última de estas, debe ser cumplida también por quien se opone a que se dicte sentencia sumariamente. En particular, al contestar una moción de sentencia sumaria, el promovido deberá presentar una relación concisa y organizada de aquellos hechos esenciales y pertinentes que, a su juicio, estén en controversia, citando específicamente los párrafos según fueron enumerados por el promovente de la moción. *Íd.*, citando a Bobé v. UBS Financial Services, *supra*, a la pág. 21; Mun. de Añasco v. ASES et al., 188 DPR 307, 326 (2013) y Ramos Pérez v. Univisión, 178 DPR 200, 221 (2010). También, enumerará los hechos que no están en controversia, indicando los

párrafos o las páginas de las declaraciones juradas u otra prueba admisible donde se establezcan los mismos. *Íd*. Ello es así, puesto que la parte que se opone a que se dicte sentencia sumaria no puede descansar en meras alegaciones. Meléndez González v. M. Cuebas, 193 DPR 100, 136 (2015). Al final de cuentas, cualquier duda no es suficiente para derrotar una moción de sentencia sumaria, sino que tiene que ser una que permita concluir la existencia de una controversia real y sustancial sobre hechos relevantes y pertinentes. Abrams Rivera v. ELA, 178 DPR 914, 932, 934(2010) al citar a Ramos Pérez v. Univisión, *supra.*

Ahora, el hecho de que la parte promovida no presente prueba que controvierta la evidencia presentada por la parte promovente de la moción de sentencia sumaria no implica necesariamente que dicha moción procederá automáticamente si efectivamente existe una controversia sustancial sobre hechos esenciales y materiales. Cruz Vélez v. CEE al citar a Mun. de Añasco v. ASES et al., supra, a la pág. 327 y otros. Por tanto, un tribunal podrá dictar sentencia sumaria si de las alegaciones, deposiciones, contestaciones, interrogatorios y admisiones ofrecidas, junto a las declaraciones juradas -- si las hubiere -- surge que no existe una controversia real sustancial en cuanto a ningún hecho material y solo restaría por resolver una controversia de estricto derecho. Véase, Regla 36.3 de Procedimiento Civil, *supra*, y Pepsi-Cola Manufacturing v. Mun. Cidra et al., 186 DPR 713, 755-56 (2012).

En cuanto a la revisión judicial de la procedencia de una moción de sentencia sumaria, es harto conocido que los tribunales apelativos estamos en la misma posición que el TPI. Cruz Vélez v. CEE, *supra,* a la pág. 720. Por ello, "[e]n el proceso de evaluar una sentencia sumaria dictada por el foro primario, los tribunales revisores están llamados a examinar el expediente *de novo* y verificar que las partes cumplieron con las exigencias de la Regla 36.3[ …]. Además, deberán comprobar que, si existen hechos en

controversia, el juez que dictó sentencia sumaria los haya consignado. En el caso de que no se encuentren hechos materiales en controversia, igualmente procede revisar *de novo* si se aplicó el Derecho correctamente a la controversia planteada". Rivera Matos v. ELA, 204 DPR 1010, 1025 (2020).

**-C-**

El contrato de seguro es aquel acuerdo mediante el cual una persona se obliga a indemnizar a otra o a pagarle o proveerle un beneficio específico o determinable al producirse un evento incierto previsto en el mismo. Art. 1.020 del Código de Seguros, 26 LPRA sec. 102. Véase también, Rivera Matos v. ELA, *supra*. En este, el asegurador asume determinados riesgos a cambio del cobro de una prima o cuota periódica, en virtud de la que se obliga a responder por la carga económica que recaiga sobre el asegurado de ocurrir un suceso especificado en el contrato. ECP Incorporated v. OCS, 205 DPR 268 (2020), citando a S.L.G. Francis-Acevedo v. SIMED, 176 DPR 372 (2009) y otros allí citados. Así pues, la función primordial de una póliza de seguro es establecer un mecanismo para transferir un riesgo y de esta manera proteger al asegurado de ciertos eventos identificados en el contrato de seguros. Savary et al. v. Mun. Fajardo et al., 198 DPR 1014, 1023 (2017), citando a R.J. Reynolds v. Vega Otero, 197 DPR 699 (2017) y otros.[10]

El Código de Seguros de Puerto Rico, 26 LPRA sec. 101 *et seq.*, (Código de Seguros) es la ley que reglamenta las prácticas y los requisitos del negocio de seguros. Jiménez López et al v. SIMED, 180 DPR 1 (2010). Tal negocio, está revestido de un alto interés público, por lo que ha sido regulado ampliamente por el Estado. Molina v. Plaza Acuática, 166 DPR 260, 266 (2005). Conforme establece el Código de Seguros, todo contrato de seguro deberá interpretarse globalmente, a base del conjunto total de sus términos y condiciones, según se expresen en la póliza y según se hayan

---

[10] Se denomina póliza el documento donde se consignan los términos que rigen el contrato de seguro. Art. 11.140(1) del Código de Seguros, 26 LPRA sec. 1114(1).

ampliado, extendido, o modificado por aditamento, endoso o solicitud adherido a la póliza y que forme parte de ésta. 26 LPRA sec. 1125. Así pues, corresponde interpretar el lenguaje plasmado en la póliza en su acepción de uso común general, sin ceñirse demasiado al rigor gramatical. Rivera Matos v. ELA, *supra,* al citar a Jiménez López et al. v. Simed, *supra;* SLG Francis-Acevedo v. SIMED, *supra;* y Echandi Otero v. Stewart Title, 174 DPR 355 (2008). Asimismo, las cláusulas de la póliza se examinarán desde el punto de vista de una persona normal de inteligencia promedio que fuese a adquirir el seguro. Rivera Matos v. ELA, *supra,* mencionando a S.L.G. Ortiz-Alvarado v. Great American, 182 DPR 48 (2011).

En cuanto al ejercicio de interpretación, es menester establecer que los términos del contrato de seguro se consideran claros cuando su lenguaje es específico, sin que dé lugar a dudas, ambigüedades o sea susceptible de diferentes interpretaciones. Sin embargo, toda vez que el contrato de seguro es uno de adhesión, redactado en su totalidad por el asegurador, aquellas cláusulas dudosas o ambiguas deben interpretarse liberalmente en beneficio del asegurado para hacer cumplir el designio intrínseco de la póliza: dar protección al asegurado. Maderas Tratadas v. Sun Alliance et al., 185 DPR 880 (2012). Igualmente, será necesario examinar si existen cláusulas de exclusión en el contrato por virtud de las que la aseguradora exceptúa determinados eventos, riesgos o peligros de la cubierta. Viruet et al. v. SLG Casiano-Reyes, 194 DPR 271 (2015). Tales exclusiones deben interpretarse restrictivamente en contra del asegurador. No obstante, si los términos de las cláusulas de exclusión son claros y aplican a una situación determinada, no podría responsabilizarse a la aseguradora por aquellos riesgos expresamente exceptuados. *Íd.*, pág. 279.

Cabe destacar que le corresponde al asegurado el peso de establecer que su reclamación está comprendida dentro de las disposiciones del contrato de seguro. Por su parte, es la aseguradora quien tiene que

evidenciar que aplica alguna exclusión. <u>Rivera Matos v. ELA</u>, *supra*, citando a <u>Insurance Claims and Disputes</u>, 6ta ed., St. Paul, Minn., Ed. Thompson Reuters, 2013, Sec. 9.1, págs. 9-2 y 9.6 (2013).

**-III-**

Antes de atender los planteamientos sometidos por Triple-S, es menester destacar que la determinación recurrida deniega la concesión de una moción de carácter dispositivo. Por tanto, el asunto traído ante nuestra consideración versa sobre una de las materias interlocutorias sobre las que, conforme la Regla 52.1 de Procedimiento Civil, *supra,* podrá expedirse el auto discrecional del *Certiorari*. Sin embargo, a la luz de los criterios dispuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, rechazamos intervenir en los méritos del dictamen recurrido, para variar la determinación del foro recurrido.  Veamos.

Según expresamos al exponer los hechos procesales, Triple-S argumenta que el foro primario incidió al denegar su petición de sentencia sumaria sometida en el caso de epígrafe y determinar que las dos pólizas, la primera a favor de Motopac y la segunda a favor de AI Generator, proveen cubierta para daños resultantes de contaminación ambiental. Además, adujo que la cláusula de exclusión de contaminación 2(f) de la forma *Commercial General Liability* de la póliza era clara y libre de ambigüedad, y, por lo tanto, aplicable al caso que obra en autos. Asimismo, sostiene que la decisión recurrida debe ser revocada porque la única cubierta disponible para los reclamantes es bajo el límite de $100,000, según la Sección III de Límite de Seguro en su Cláusula de *Damage to Premises Rented to you* de la póliza.

Los recurridos, en cambio, al defender la decisión argumentan que los planteamientos levantados por Triple-S para fundamentar la concesión de su moción dispositiva, además de incorrectos y en total abstracción de la jurisprudencia relativa a la interpretación de las cláusulas de una póliza

de seguros, descansan en jurisprudencia claramente distinguible de la situación factual del caso.

Antes de atender estos planteamientos y explicar nuestra decisión, tal cual nos es exigido, debemos examinar si las mociones de sentencia sumaria interpuestas por Triple-S para cada una de las causas consolidadas, así como las respectivas oposiciones instadas ante ellas, cumplieron con los requisitos de forma que exige la Regla 36.3 de Procedimiento Civil, *supra*. Examinadas ambas mociones, así como las réplicas y demás escritos sobre el asunto, concluimos que tanto las mociones solicitando sentencia sumaria de la peticionaria, así como las oposiciones frente a estas instadas, cumplieron con tales requisitos.

Habiéndose determinado lo anterior, procede que evaluemos si en el presente caso existen controversias de hechos materiales que impidan la resolución sumaria del pleito. De haberlos, tenemos que exponer concretamente cuáles son los hechos materiales sobre los que encontramos existe controversia y cuáles están incontrovertidos. De lo contrario, resta examinar si la aplicación del derecho fue correcta.

Conforme surge del expediente, el foro primario en su *Resolución* consideró que no existía controversia sustancial sobre veintinueve (29) hechos. Ahora bien, el foro recurrido identificó como hechos en controversia, lo siguiente:

1. A cuánto asciende el daño ambiental producto del incendio.

2. Si el incendio fue ocasionado por una falla interna de una batería que estaba colocada en una silla de vinil; y si es o no usual que se coloque una batería con un cargador sobre material combustible.

3. Si Victory fue responsable por el incendio.

4. Si procede imponer responsabilidad por el incendio AI Generator y las compañías aseguradas por Triple-S, bajo la póliza núm. 30-CP-81093339-0; y la valoración del daño.

Al ejercer nuestro rol revisor, tras haber evaluado las mociones dispositivas sometidas por Triple-S, los documentos que acompañaron sus

escritos, así como a los argumentos planteados por las partes, coincidimos con el foro primario en su análisis de hechos incontrovertidos, así como de aquellos que permanecen en controversia. No identificamos, por tanto, alguna de las condiciones previstas por nuestro ordenamiento jurídico con respecto al auto de *certiorari* que nos muevan a intervenir. Siendo ello así, procede denegar el recurso.

Lo aquí resuelto, advertimos, no tiene efecto de juzgar o considerar en los méritos ninguna de las controversias de derecho planteadas por las partes, de modo que estas podrían ser planteadas nuevamente en una etapa posterior al juicio. Esto es así, ya que, como es sabido, una resolución denegatoria de un auto de *Certiorari* ni implica posición alguna del Tribunal respecto a los méritos de la causa sobre la cual trata dicho recurso. La resolución denegatoria simplemente es indicio de la facultad discrecional del tribunal revisor de negarse a revisar en determinado momento una decisión emitida por el tribunal de instancia. Cacho Pérez v. Hatton Gotay, 195 DPR 1, 12 (2016) al citar a SLG v. Pauneto Rivera, 130 DPR 749, 755 (1992) y otros.

**-IV-**

Por todo lo antes consignado, **denegamos** la expedición del auto de *Certiorari* solicitado por la parte peticionaria.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones